IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
NO. 7:20-CR-167-M-3

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | UNITED STATES' RESPONSE TO |
| ) | DEFENDANT'S MOTION |
| ) | FOR REVOCATION OF DETENTION |
| JORDAN DUNCAN ) | ORDER |
| ) | |
| Defendant. ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby responds in opposition to Defendant's motion for revocation of the pre-trial detention order by Magistrate Judge James E. Gates. Magistrate Judge Gates made no error in fact or law in concluding the defendant should be detained, and the factors to be considered by the Court in addressing this issue point conclusively to the need for continued detention.

**STATEMENT OF THE CASE**

The defendant has been charged by Superseding Criminal Indictment with conspiracy, in violation of 18 U.S.C. § 371. Realleging and incorporating 18 introductory paragraphs, the indictment alleges that the purpose of the charged conspiracy was "to regularly and repetitively manufacture and transport firearms and firearms parts, to include suppressors, in a manner that the government would not know the recipients had them, for criminal purposes, to wit, with the intention they be used unlawfully in furtherance of a civil disorder." D.E. 16.

At defendant's initial appearance on November 25, 2020, the Government moved for detention pending trial. At the subsequent detention hearing, which took place on December 9, 2020, the Government provided several hours of testimony from Special

Agent J. Chris Little of the Naval Criminal Investigative Service (NCIS) and entered 8 exhibits. The defendant offered the defendant's father and resident of Pennsylvania, Frank Duncan, as a proposed third-party custodian. Following the presentation and arguments, the magistrate judge took an overnight recess to review the evidence and the arguments and to read cases which had been cited by defendant in his argument. On reconvening the next day, the magistrate judge granted the Government's motion for detention and remanded defendant to the custody of the U.S. Marshal pending trial. The decision was given in a lengthy recitation of the various facts considered as to each of the statutory factors, included consideration of mitigating facts and argument, and acknowledged review of the cases the defendant had referenced in argument.

On December 24, 2020, the defendant filed a motion to this court seeking review of the detention decision. D.E. 67.

## LEGAL FRAMEWORK

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, states that a defendant may be detained pending trial where the United States shows "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e) and (f). Detention can be based on a showing by the United States of either of the following: (1) that, beyond a preponderance of the evidence, the defendant poses a risk of flight, United States v. Xulam, 84 F.3d 441, 443 (D.C. Cir. 1996); or (2) that, by clear and convincing evidence, the defendant poses a risk to the safety of any person or the community. 18 U.S.C. § 3142(f). The Bail Reform Act codifies a number of factors, discussed below, that courts should consider when assessing whether detention is appropriate. *See* 18 U.S.C. § 3142(g).

A pretrial detention hearing is neither a discovery device for the defense nor a

trial on the merits. The process that is due is only that which is required by and proportionate to the purpose of the proceeding. That purpose includes neither a reprise of all the evidence presented before the grand jury, United States v. Suppa, 799 F.2d 115, 119 (3d Cir.1986), nor the right to confront non-testifying government witnesses, *see, e.g.,* United States v. Accetturo, 783 F.2d 382, 388-89 (3d Cir.1986); Winsor, 785 F.2d at 756-57; United States v. Delker, 757 F.2d 1390, 1397-98 (3d Cir.1985). See also United States v. Hurtado, 779 F.2d 1467, 1479 (11th Cir.1985) (purpose of pretrial detention hearing is not to "rehash ... probable cause" but to provide opportunity for detainee to show no risk of flight or danger to community); United States v. Williams, 798 F.Supp. 34, 36 (D.D.C.1992) (same).

## **Summary of the Order regarding Detention**[1]

As noted above, the decision of the magistrate judge, upon information and belief, went factor by factor, and in each instance, concluded:

1) The weight of the evidence is strong. While a lot of the evidence received related to others, there was enough evidence presented to obtain a conviction. Duncan's specific role in the conspiracy was demonstrated, and while he might not have been a leader of the conspiracy, the evidence showed he vetted new members, that he lived with Collins and was there receiving a pallet which contained stolen military equipment and illegal weapons, and other evidence which tied him directly to the crimes charged. Magistrate Judge Gates made a point of noting he had read the cases cited by defendant

---

[1] A transcript of the hearing and the reading of the decision the next day, although ordered, are not yet available. For that reason, the government does not here assert the specific facts that came into the record through the multi-hour testimony of the agent, but upon information and belief refers only to its notes of the magistrate judge's recitation of his findings. Given the length of the evidentiary presentation, it may be helpful for the Court to have additional briefs regarding the evidence and decision once the transcripts are available.

in argument and was very sensitive to the First Amendment concerns expressed, but noted the purpose of the hearing was not a motion to dismiss- that issue would be at a later point in the litigation.

2) The nature and circumstance of the offense: the evidence showed Duncan had significant involvement—he was not an innocent bystander. Specifically noting that without looking at the underlying beliefs, there was significant violence and anti-federal government ideas, and that there had been training, preparedness, and a ready to engage in violent conduct. The magistrate judge noted the evidence indicated there was an overall plan or strategy, which included a library on explosives, military manuals that should not have been in his possession-certainly not in conjunction with this conspiracy. The risk of danger was highlighted in the chats (reference to U.S. Ex. 6, chats between Duncan and Kryscuk). The magistrate judge noted Duncan had moved from San Antonio to Boise for this purpose and that his roommate in Boise was a co-conspirator-both further evidence of the depth of defendant Duncan's involvement in the charged activity.

3) As to Duncan's history and characteristics, Magistrate Judge Gates recalled that at the time of his arrest, a false id was located in his apartment, inside an official U.S. passport obtained through the Department of Defense for government travel. These both went directly to the risk of flight. The evidence had shown Duncan was a military-trained Russian linguist and was trained in intelligence and communications as well as standard Marine skills, all of which goes to both the risk of flight and risk of danger to the community. The magistrate judge noted, too, that there had been evidence

Duncan was likely not candid on forms regarding his military security clearance, for had he been candid about his participation with this group, his clearance would not have been granted.

4) The nature and seriousness of the danger to others, Magistrate Judge Gates recounted the evidence of Duncan's participation in a violent anti-government group. It was noted there was also an increased risk of flight due to the anti-government views.

The magistrate judge heard and recalled the testimony of the proposed third party custodian, Duncan's father, Frank Duncan. The record would show Mr. Duncan is a resident of Pennsylvania, and a pastor of a church there. He testified he was unaware of this activity of his son's, and that Duncan had taken a pay-cut in his move to Boise. Magistrate Judge Gates believed Mr. Duncan clearly a suitable third party custodian-but that the risk of flight and danger were just too great. In addition, it concerned the magistrate judge that Mr. Duncan had been unaware of all this activity – demonstrating Duncan had successfully hid this life with deep involvement and a commitment to the anti-government views, some violent, from his family. Additionally, having the defendant reside in Pennsylvania increased the risk of flight in the magistrate judge's view.

Magistrate Judge Gates considered the mitigating evidence offered by defendant. Mr. Duncan testified that a job awaited defendant in Pennsylvania, working for a congregant of Mr. Duncan's. It was a computer data entry job, cataloging and posting items for sale on an online auction. The government argued in part that a job with internet access would potentially increase flight risk and ongoing communications with

co-conspirators not in custody, and the court shared that concern. The evidence had made implicit that others share Duncan's views, that his community of believers were spread around the nation, and they might be ready and able to assist in flight.

The magistrate judge also considered the relatively short maximum prison term for the crime with which Duncan is charged- a five year maximum. Yet, the magistrate judge reasoned, it is still a felony conviction, 5 years is still a considerable amount of time, and remains some incentive to flee.

Magistrate Judge Gates considered the recommendation of the Probation Office for pretrial release, made without benefit of the evidence he had heard, and determined contrary to its recommendation.

## ARGUMENT

As noted, the presentation of evidence at the detention hearing lasted several hours. The magistrate's recitation of his order was given after an overnight recess, and itself took 15 minutes or more. Specific admitted facts – like all members' possession of false identifications (U.S. Exhibit 3 at 2 is Duncan's), Duncan's presence and involvement in a live-fire training exercise, video clips of which were compiled and made into a video (U.S. Exhibit 7) and distributed among like-minded individuals, a handwritten list of intersections/places recovered at Kryscuk's residence, all related to the power grid and a fuel depot in the Northwest (U.S. Exhibit 5), and significant messages between Kryscuk ("Slim Reaper") and Duncan ("JCD"), to include ones making fun of the surviving family of a victim of the Christchurch, New Zealand mass shooting, and referencing the shooter, Brenton Tarrant, as a "legend" (U.S. Ex. 6, at 938) specifically counter defendant's position in this appeal. The principal action

alleged by Duncan was not the provision of a box believed to contain a suppressor (D.E. 67 at 6), but ongoing participation in a conspiracy which in preparing itself and others for an acceleration of the collapse of the federal government, they manufactured and illegally distributed firearms and silencers, intended to use them in a civil disorder, and outfitted themselves with stolen military equipment, to include ceramic body armor plates and other gear.

While there was no evidence of a specific plan to be executed at a specific time, they surveilled Black Lives Matter protests in the Boise area, discussing ways of bringing mayhem to them; they discussed the use of explosives, and Duncan had an extensive library of explosive manuals, and manuals on how to make nerve toxins and poisonous gas as well. See, D.E. 67 at 7.

Defendant argues the magistrate judge erred in that Duncan's ideologies "were the driving force of the magistrate's conclusion that Mr. Jordan [sic] posed a danger." This, defendant posits, runs "afoul of the First Amendment." D.E. 67 at 8, citing United States v. D-1 David Brian Stone, No 10-21023, 2010 U.S. Dist. Lexis 42834 at *5 (E.D. Mich. May 3, 2010). Significantly, this district court ruling was overturned in a published decision by the 6th Circuit Court of Appeals. United States v. Stone, 608 F.3d 939 (6th Cir. 2010). This argument also is directly contrary to Magistrate Judge Gates' own words that he was sensitive to the First Amendment concerns, and that without looking at the underlying ideologies (that is, the white supremacist ideologies), he could not ignore the presence of violence, training and preparedness for it, an overall plan, and significant anti-federal government views. Those things are proper considerations regarding danger and flight risk.

Finally, the defendant alleges that the Fourth Circuit Court of Appeals has held in an *en banc* decision that the risk of flight must be established by clear and convincing evidence, rather than the preponderance standard used by the magistrate judge. D.E. 67 at 12. Clark addressed whether a defendant could waive a detention hearing, and an associated issue regarding the timeliness of the hearing. Clark, 865 F.2d 1433, 1436. The opinion discussed the determinations by the magistrate judge and the district court judge, both of which had held there was clear and convincing evidence to support detention. Id. at 1437-38. This Court affirmed those underlying determinations that clear and convincing evidence existed, and asserted, without discussion, that under the Bail Reform Act, a defendant pending trial can be detained if there is "clear and convincing evidence 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" Id. at 1435-36. Significantly, the government finds no case which relied upon this statement in the Clark opinion in setting the burden of proof. While the Fourth Circuit's consideration of this issue has not resulted in a published opinion, the lower courts in the Circuit have frequently cited the guidance provided in United States v. Stewart, 19 F. App'x 46, 48 (4th Cir. 2001)(unpublished) case to rule the same. See e.g. United States v. Hroub, 2020 WL 3805168 (E.D.N.C. July 7, 2020); United States v. Sauls, 2018 WL 1755500 (D.S.C. April 12, 2018); United States v. Carver, 2018 WL 576844 (E.D.N.C. Jan. 26, 2018).

## CONCLUSION

For the reasons expressed above, no condition or combination of conditions will reasonably assure the appearance of Duncan and the safety of other persons and the

community at large. The Magistrate Judge correctly found that the United States has shown by clear and convincing evidence the risk posed by defendant to the safety of any person or the community. Moreover, The United States has shown beyond a preponderance of the evidence that the defendant poses a risk of flight. Taken together, this risk of flight and risk of danger to the community are simply too great to allow for defendant's pre-trial release. *See* United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) (noting home detention, family assurances and electronic monitoring were not sufficient in the face of strong evidence that the defendant presented a flight risk and danger to community).

For these reasons, the defendant's motion should be denied.

Respectfully submitted this 7th day of January, 2021.

                                    ROBERT J. HIGDON, JR.
                                    United States Attorney

By:    */s/ Barbara D. Kocher*
        BARBARA D. KOCHER
        Assistant U.S. Attorney
        150 Fayetteville St, Suite 2100
        Raleigh, NC 27601
        Telephone: 919-856-4530
        Fax: 919-856-4487
        E-mail: barb.kocher@usdoj.gov
        N.C. Bar No. 16360

# CERTIFICATE OF SERVICE

This is to certify that I have this 7th day of January 2021, served a copy of the foregoing filing upon counsel for the defendant in this action by electronically filing the foregoing with the Clerk of Court, using the CM/ECF system which will send notification of such filing to attorney Raymond Tarlton.

*/s/ Barbara D. Kocher*
BARBARA D. KOCHER
Assistant U.S. Attorney
150 Fayetteville St, Suite 2100
Raleigh, NC 27601
Telephone: 919-856-4530
Fax: 919-856-4487
E-mail: barb.kocher@usdoj.gov