IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:20-cr-00167-M-3

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JORDAN DUNCAN,<br><br>    Defendant. | ORDER |

This matter comes before the court on the Defendant Jordan Duncan's ("Duncan") motion to suppress [DE 323]. Based on the following reasons, the court denies the motion.

## I. Background

### A. Factual Background

In November 2019, law enforcement began investigating a white supremacist group for suspected firearm manufacturing and trafficking activity. The investigation first centered around the activity of Liam Collins ("Collins"), who accepted payment for and coordinated the delivery of illegally manufactured firearms and silencers. Collins commissioned Paul Kryscuk ("Kryscuk") to manufacture and ship the firearms and parts. Together, they allegedly distributed deconstructed firearms packages to their coconspirators, including Duncan, Joseph Maurino ("Maurino"), and Justin Hermanson ("Hermanson").

As the alleged conspiracy to manufacture and ship firearms matured, the group members took steps to consolidate their locations. Kryscuk was the first to move to Boise, Idaho. In July 2020, Duncan, Maurino, and another individual closely associated with Collins met in Boise to participate in firearms training and propaganda production. In September 2020, Duncan moved to

Boise. Soon after, Collins joined him. By October 2020, the group under investigation appeared to have moved to the area.

On October 9, 2020, Kryscuk's wife called the FBI National Threat Operations Center to report Kryscuk's suspected involvement in firearm and explosives manufacturing. She described Kryscuk's association with Collins and Duncan. She reported that Kryscuk possessed a list of politicians' names and addresses in his wallet. A review of the text messages between Kryscuk and his wife, which were previously made available through a warrant, indicated prior conversations on Instagram contextualizing the violent plans that concerned her. Based on the information available, the FBI submitted emergency disclosure requests pursuant to § 2702 of the Store Communications Act ("SCA") to Meta for Kryscuk's and Duncan's Instagram accounts.

According to the production, Duncan received a direct message from Kryscuk on July 19, 2020 instructing him to "Follow BLM Boise . . . I'm getting a lot of intel from their social media." Duncan replied, "Will do."[1] In October 2020, Duncan discussed with Kryscuk another group's plot to kidnap a state governor, including their own group's odds of success based on their size and what mistakes they could avoid based on the prior group's plan. Duncan also instructed Kryscuk on locating politicians and other individuals using information available on Instagram.

### B. Procedural Background

On August 18, 2021, the United States charged Duncan with conspiracy to manufacture and ship firearms in violation of 18 U.S.C. § 922(a)(1)(A) (Count One, 18 U.S.C. § 371) and

---

[1] The production also revealed that, on August 27 and 28, 2020, Kryscuk stated to an unindicted individual, "I'm mentally fried from watching these niggers and jews have a field day at our expense." Kryscuk further stated, "I hate cops so much man, They're literally letting this happen, Like the government has sent police to enforce anti-white riots across the country. They need to die."

2

Case 7:20-cr-00167-M   Document 381   Filed 01/29/24   Page 2 of 5

conspiracy to destroy an energy facility (Count Five, 18 U.S.C. § 1366(a)). DE 149. On August 22, 2023, Duncan filed the instant motion to suppress electronic evidence resulting from the warrantless search of the direct messages associated with his Instagram account. DE 341. The United States timely responded. This matter is ripe.

## II. Discussion

Duncan seeks to suppress the evidence seized from the direct messages of his Instagram account. He argues law enforcement "searched" his direct messages for Fourth Amendment purposes because he had a legitimate expectation of privacy in the content of those communications. DE 323 at 4. This search, Duncan argues, was unconstitutional because law enforcement did not obtain a warrant before inspecting the information. *See id.* at 7–9. Indeed, rather than obtaining a warrant, law enforcement relied on Meta's voluntary disclosure pursuant to § 2702 to obtain the challenged information. Thus, Duncan contends the failure to obtain a proper warrant is fatal to the admissibility of the challenged evidence. *See id.*

The Fourth Amendment provides the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See* U.S. Const. amend. IV. Searches conducted without a warrant are "per se unreasonable" and generally unconstitutional subject to a few exceptions. *See Katz v. United States*, 389 U.S. 347, 357 (1967).[2]

A governmental search implicates Fourth Amendment protection when "the person who claims the protection . . . has a legitimate expectation of privacy in the invaded place." *United States v. Castellanos*, 716 F.3d 828, 833 (4th Cir. 2013) (citation omitted). To demonstrate a legitimate expectation of privacy, the defendant must show a "subjective expectation of privacy"

---

[2] Although an apparent emergency prompted law enforcement to search Duncan's direct messages, neither party has addressed the extent to which the exigent circumstances exception to the warrant requirement applies in this case.

3

that is "objectively reasonable; in other words, it must be an expectation that society is willing to recognize as reasonable." *Id.* (quoting *United States v. Bullard*, 645 F.3d 237, 242 (4th Cir.2011)). "The burden of showing a legitimate expectation of privacy in the area searched rests with the defendant." *Id.*

Duncan maintains that he "took reasonable steps" to keep "the direct messaging portion of [his Instagram] account" private and that his privacy expectation is reasonable to the extent that courts have recognized protection for the content of emails and nonpublic social media posts. *See* DE 323 at 2, 4; *see also United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010) ("[A] subscriber enjoys a reasonable expectation of privacy in the contents of emails "that are stored with, or sent or received through, a commercial ISP."); *United States v. Chavez*, 423 F. Supp. 3d 194, 201–05 (W.D.N.C. 2019) ("As with sealed packages and private phone calls, it is objectively reasonable for an individual to expect privacy in non-public content that is entrusted to a social media website as the intermediary of the ultimate recipient.").

To decide the pending motion, the court need not determine whether Duncan maintained a subjective expectation of privacy in his direct messages and whether that privacy expectation was objectively reasonable. The court simply assumes that a "search" has taken place for purposes of the Fourth Amendment. The dispositive issue is whether the good faith exception to the exclusionary rule applies.

Duncan states that the good faith "exception does not apply in a case without an officer's reliance on a valid warrant." DE 323 at 7 (citing *United States v. Leon*, 468 U.S. 897, 922–23 (1984)). Duncan, however, loses sight of the fact that the "application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence

4

when an officer acts in objectively reasonable reliance on a warrant." *Illinois v. Krull*, 480 U.S. 340, 349 (1987). The "approach used in *Leon* is equally applicable to" cases involving good faith reliance on statutes and warrants alike. *Id.* Nonetheless, an officer cannot "be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional." *Id.* at 355.

Here, law enforcement relied on the voluntary disclosure procedure set forth in § 2702, which provides in pertinent part that electronic communication service providers "may divulge the contents of a communication . . . to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of communications relating to the emergency." 18 U.S.C. § 2702(b)(8). The court is unaware of any precedent holding that § 2702 is unconstitutional on its face or as applied to the circumstances presented in this case. Moreover, "applying the Fourth Amendment to social media accounts is a relatively unexplored area of law with nuances that have yet to be discovered. Courts should not punish law enforcement officers who are on the frontiers of new technology simply because 'they are at the beginning of a learning curve and have not yet been apprised of the preferences of courts on novel questions.'" *See Chavez*, 423 F. Supp. 3d at 208 (citation omitted). The officers in this case relied in good faith on § 2702 for the voluntary disclosure of Duncan's direct messages to respond to an emergency.

### III. Conclusion

For the foregoing reasons, Duncan's motion to suppress [DE 323] is DENIED.

SO ORDERED this 26th day of January, 2024.

*Richard E Myers II*
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

5