```
             UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF NORTH CAROLINA
                  SOUTHERN DIVISION

--------------------------------------------------------

UNITED STATES OF AMERICA,

                Plaintiff,

     -vs-                         Case No. 7:20-CR-167-M-3


JORDAN DUNCAN,

                Defendant.

--------------------------------------------------------

             CONTINUATION OF MOTION HEARING
                  JANUARY 21, 2021
         THE HONORABLE CHIEF JUDGE RICHARD E. MYERS II
               UNITED STATES DISTRICT JUDGE



     A P P E A R A N C E S


On Behalf of the Government

BARBARA D. KOCHER
United States Attorney's Office - EDNC
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601


On Behalf of the Defendant

RAYMOND C. TARLTON
Tarlton Law Firm
P.O. Box 91624
Raleigh, North Carolina 27675



               Risa Kramer, RMR, CRR
               Official Court Reporter
            United States District Court
              Wilmington, North Carolina
```

```
 1                    TRANSCRIPT OF PROCEEDINGS

 2              (Proceedings commenced at 9:59 a.m.)

 3              THE COURT:  If the clerk would please call

 4   the case.

 5              THE CLERK:  USA versus Jordan Duncan.

 6              THE COURT:  Good morning, counsel.

 7              This is the continued detention hearing for

 8   Jordan Duncan.  The Court continued it to get a

 9   presentence -- sorry -- a report from the probation

10   office on the conditions that existed in Mr. Duncan's

11   father's home.

12              Is there anything further from either party

13   that the Court should be considering as it makes its

14   determination?  Anything from the government?

15              MS. KOCHER:  Your Honor, I would like to

16   highlight today a particular thread of argument and

17   evidence that had been made before Judge Gates that was

18   not mentioned at length last week that does go to what I

19   believe is both the risk of flight and the danger.

20              If I may approach, Your Honor.  Marked as

21   Government's Exhibit 2 for the purpose of this hearing,

22   last week having introduced Exhibit 1.

23              The government has handed up a copy of this

24   defendant's SF-86.  I would note, Your Honor, that this

25   is an unredacted version, and I would ask that it remain
```

1  sealed -- or be sealed.

2          THE COURT:  It will be accepted and kept

3  under seal.

4          MS. KOCHER:  Thank you, Your Honor.

5          This is the document that all government

6  employees seeking, or asked to take on, a national

7  security position must complete in order to ultimately

8  be adjudged -- assessed and adjudged worthy of a

9  national security position.

10          It acts in the very first instance as a

11  filter, just by the -- the responses on this form filter

12  out, you know, hopefully and potentially persons who

13  would not be appropriate to have a national security

14  position and, ultimately, a security clearance.  The

15  instructions are very clear.  It sets out that the

16  information is voluntary, although that they -- you

17  know, if the answers aren't given, they can't complete

18  the investigation.  Gives the statutory authority, the

19  privacy rights, if any, attached to it.  The penalties

20  for inaccurate or false statements are found on page 4;

21  the process through which the applying federal agency

22  would go through to make the final determination of

23  eligibility for that security clearance and so on, Your

24  Honor, the instruction lasting six pages of that form.

25          I turn your attention to pages 38 and 39 of

1    this particular document.  I would note, Your Honor,

2    that this document was found in Mr. Duncan's apartment

3    at the search that went down on the day of his arrest,

4    which I think was October 20th of 2020.  At the

5    bottom -- this is a version that has been filed online

6    and then printed off.  And it says down at the bottom,

7    as each page does, certified at 2020-01-03, so January

8    3rd of 2020.

9             Particularly, on page 38 it asks the

10   applicant whose -- Social Security number, and this is

11   Mr. Duncan's, as earlier pages would indicate.

12            First it asks about the use and misuse of

13   information technology systems; whether the applicant,

14   Mr. Duncan, had ever illegally or without proper

15   authorization accessed or attempted to access any

16   information technology system.  The answer is "no."

17   Then it's whether he ever modified, destroyed, or denied

18   others access to information technology.  He answers

19   "no."  And then finally, and most pertinent, Your Honor,

20   unauthorized and unlawful use in the last seven years,

21   have you introduced, removed, or used hardware,

22   software, or media in connection with any information

23   technology system without authorization when

24   specifically prohibited by rules.

25            Looking on down, then, to the section 29,

which is the association record, and the relevant
questions then are on the last page of Government's
Exhibit 2, page 39.  Are you now or have you ever been a
member of an organization dedicated to terrorism?  The
answer is "no."  Have you ever knowingly engaged in any
acts of terrorism?  "No."  Have you ever advocated any
acts of terrorism or activities designed to overthrow
the U.S. government by force?  "No."  Have you ever been
a member of an organization dedicated to the use of
violence or force to overthrow the United States
governments and which engaged in activities to that end
with an awareness of the organization's dedication to
that end, or with a specific intent to further such
activities?  "No."

      Have you ever been a member of an
organization that advocates or practices commission of
acts of force or violence to discourage others from
exercising their rights?  "No."  Have you ever knowingly
engaged in activities designed to overthrow the U.S.
government by force?  "No."  Have you ever associated
with anyone involved in activities to further terrorism?
"No."  Each lie being a potential count under 18 U.S.C.
Section 1001.

      The significance of that, of those mistruths
and lies -- because the evidence presented in terms of

1   this detention hearing sets out significant association
2   with individuals who would cause a "yes" answer to
3   numerous questions in regard to the association
4   questions -- not only did he pass the filter but was
5   granted a top secret security clearance.  This goes to,
6   Your Honor, that the conspiracy, the ideology, while not
7   itself important, brought about thoughts and actions
8   specifically predicated on overthrowing the United
9   States government and violent acts to that end.

10              This defendant has shown through his answers
11   on this SF-86 that he's got no respect for the rules
12   that the government would set, that this Court would set
13   for him, and even more importantly, no respect for
14   national security information.

15              And I go on, Your Honor.  A number of
16   digital devices were seized at Mr. Duncan's arrest, to
17   include a number of hard drives and a laptop.  The
18   government has not yet been able to turn these devices
19   over to defendants in discovery because of a snag.  And
20   that snag is in Mr. Duncan's drives, there has been
21   discovered a good bit of material that is documented
22   "FOUO," for official use only, which, while not
23   classified, is not to be possessed personally once the
24   individual leaves the branch and the office and the
25   agency and has no further need of that information.

1          Moreover, there is information that is
2   marked at a classified level, and I would note
3   regardless of where that information came from, if it
4   proves to be classified, it is illegal and in violation
5   of law for this defendant to have possessed it.  It
6   would in fact be illegal and another crime for the
7   defendant, say, to lean over to his attorney at this
8   point and even tell him what material it is I'm talking
9   about.  Until we are able to further discern whether or
10  not it is in fact classified, that entire drive has to
11  be treated as classified at the level that the labels on
12  the documents indicate they are.  It has caused
13  significant difficulty in that review, then, of those
14  devices.
15          Moreover, because of the sharing of the
16  various screen shots of the Instagram accounts, things
17  that you have seen, we can't copy any of the other
18  devices, any of the other defendants' devices until they
19  too are scrubbed and made certain that there is no
20  inappropriate information on those that would be illegal
21  for us to disseminate then further to the defendants.
22          To my point, Your Honor, the "for official
23  use only" information that has been recovered to date
24  from this defendant's drives include a good number of
25  manuals that are marked "Possession of the United States

Marine Corps, Second Radio Battalion Student Handbook."
There were "for official use information only" files
related to urban warfare.  There were after-action
reports for operation during freedom and insurgent
tactics in Afghanistan.  There were multiple FOUO
detailed maps of U.S. military installations, to include
Camp Lejeune's military installation maps, with markings
on it that indicated the map was limited in distribution
to the Department of Defense personnel only.

There was, in fact, several files that
related specifically to the handling of classified
information and the requirements for it, how to protect
it and where it could and could not be housed, which
presumably would include not on a personal drive in
someone's apartment.

Your Honor, there was a manual that
appeared -- in fact, it was titled "Ethnic Cleansing
Operations U.S. Army."  Looked like an Army manual but
it was not.  It included a chapter on why ethnic
cleansing, the pros and cons to weapon systems, and a --
sections instructing the reader on how to overtake and
use a National Guard armory, and giving the reader the
ideas of what equipment that might be found in there, to
include supplies, vehicles, ammunition, munitions, and
those things.

1             There were more than 1,000 files related to

2    explosives.  I would bring -- again, my point being the

3    disrespect for the government -- again, a number of FOUO

4    documents.  One in particular that I highlight is an IED

5    awareness guide, Iraq in Afghan.  This was FOUO.  And

6    specifically marked on it was a destruction notice that

7    that document should be destroyed by any means in order

8    to prevent disclosure of its content or reconstruction

9    of the document.

10            There was a handbook.  There was a mega

11   survival e-book collection which was over 2,500 files.

12   And I would bring your attention to a handbook called

13   "The Essential Underground Handbook" which had chapters

14   or sections in it discussing offshore money flow, the

15   jurisdictions and banks, confidential check cashing

16   services, the mail drops in various global providers;

17   second identity chapters to include second passports and

18   citizenship, fake identity documents; a chapter and

19   section on escaping the United States, escaping Canada,

20   and escaping the United Kingdom.

21            I don't believe I mentioned last week that

22   although not found on Mr. Duncan, Mr. Kryscuk actually

23   had a handcuff key sewn in his belt, and that was also

24   one of the documents found in Mr. Duncan's materials,

25   was this ability.

1          Your Honor, the government maintains that

2     the risk of flight that Mr. Duncan presents, both

3     because of his specialized expertise and significant

4     studies in these areas, with his military training and

5     with the view of the United States government that he

6     has and that he has shown, there is no combination of

7     conditions that will satisfy the risk of flight concerns

8     and/or the danger to others.

9          THE COURT:  Thank you, counsel.  Response?

10         MR. TARLTON:  Yes.  Briefly, Your Honor.

11         I'd say that the government certainly has

12    not charged Mr. Duncan with terrorism, and for them to

13    argue that asserting "no" on a security clearance to

14    whether he's involved in terrorism is a lie is

15    absolutely unsupported by what they've presented to Your

16    Honor.

17         As to -- we know nothing about -- or I know

18    nothing about, through discovery, this claim that there

19    could be something that was classified on a computer

20    they attribute to my client.  But what I think they

21    described to you in detail that they've said are -- is

22    not classified materials are the kinds of publications

23    that are available in the public domain and they -- you

24    see them advertised at gun trade show -- or gun shows

25    and things like that.  It's a part of a prepper culture,

people prepping in the event that anarchy ensues in
society, that they want to be prepared for that. That
is, you know, something different than a group that's
actively out with a specific plan to actually overthrow
the government. The big picture is they have not shown
through their presentations that that is actually what
was going on as to my client, Your Honor.

THE COURT: All right. Thank you,
Mr. Tarlton.

MR. TARLTON: Yes, Your Honor.

THE COURT: All right. I've reviewed all
the materials in this case including all the testimony
before Judge Gates, the materials that were exhibits
before Judge Gates. I've heard extensive testimony here
from the government and from Mr. Tarlton. I do believe
this to be a close case.

At the end of the day, however, and for the
reasons stated by Judge Gates, I'm gonna order the
continued detention of this defendant pending trial.
I'm gonna find that the government has shown by a
preponderance of the evidence that there is a
significant risk of flight based on the knowledge,
training, stated goals of the organization of which the
defendant was a member, and it's on that basis that I'm
gonna order his detention.

1           The Court also notes for the record that the

2     Pennsylvania supervision capabilities do not include GPS

3     monitoring, so that was not available to the Court as a

4     potential option for this defendant's release.

5           All right.  Anything further from the

6     government on this matter?

7           MS. KOCHER:  No, Your Honor.

8           THE COURT:  Anything further, Mr. Tarlton?

9           MR. TARLTON:  Nothing further at this time,

10    Your Honor.

11          THE COURT:  Mr. Tarlton, do you need some

12    time with your client?

13          MR. TARLTON:  Just briefly, Your Honor.

14          THE COURT:  I'll ask the Marshals to arrange

15    that, make that possible so you don't have to do it here

16    inside the courtroom.

17          MR. TARLTON:  Thank you, Your Honor.

18          (Proceedings concluded at 10:16 a.m.)

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3          I certify that the foregoing is a correct

4   transcript from the record of proceedings in the

5   above-entitled matter.

6

7   /s/Risa A. Kramer                    2/7/2024

8   Risa A. Kramer, RMR, CRR             Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25